# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| JEFFREY H. MIMS, CHAPTER 7 § <br> TRUSTEE OF THE BANKRUPTCY § <br> ESTATE OF JAMES H. MOORE, III § <br> § <br> Appellant, § <br> § <br> v. § <br> § <br> BRUNSWICK HOMES, LLC, a Texas § <br> Limited Liability Company § <br> § <br> Appellee. § § § | Case No. 4:07-cv-420 <br><br><br><br><br><br><br><br> Bankruptcy Case No. 06-41556 |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Appellant Jeffrey H. Mims, Chapter 7 Trustee of the Bankruptcy Estate of James H. Moore, challenges the Bankruptcy Court's July 20, 2007, Order Granting in Part and Denying in Part Objections to the Claim of Brunswick Homes, LLC.[1] This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 158(a). Having carefully reviewed the submissions of the parties and in light of the record on appeal, the circumstances of this case, and the applicable law, the Court AFFIRMS in part and VACATES and REMANDS in part the decision of the Bankruptcy Court.

---

[1] The Court notes that a separate appeal was filed regarding the same order by the appellee in this case, Brunswick Homes, LLC (Case No. 4:07-cv-421). However, this memorandum opinion and order will only address the issues presented by Jeffrey H. Mims' appeal. A separate memorandum opinion and order will address the appeal by Brunswick Homes, LLC.

I.   **STATEMENT OF THE APPEAL**

As the Bankruptcy Court points out, this matter involves a tangled web of transactions by and between Debtor, Horseshoe Nail Ranch, L.P., and a number of business entities created or managed by James H. Moore ("Moore"). It appears that the loans and transactions between these entities were often inadequately or inaccurately documented, leading to a number of disputes that had to be resolved by the Bankruptcy Court. At the heart of this particular dispute is the determination of which business entity loaned Debtor over $500,000 in May 2002. The Bankruptcy Court determined that the loan was made by Brunswick Homes, LLC ("Brunswick Homes" or "Appellee"). Appellant Jeffrey H. Mims ("Mims" or "Appellant") contends that the loan was made by James H. Moore & Associates, Inc.

II.  **FACTUAL BACKGROUND**

Around 1997, Moore and Rod Miller ("Miller") formed Brunswick Homes, a company that builds homes and develops lots. Miller owns 50% of Brunswick Homes. The other 50% is owned by JHM Properties, Inc., a corporation that was formed by Moore's wife and that pays Moore's living expenses pursuant to an employment agreement between Mr. and Mrs. Moore. Brunswick Properties, LLC ("Brunswick Properties") is an affiliate of Brunswick Homes, which shares the same management and offices as Brunswick Homes.

Debtor, Horseshoe Nail Ranch, L.P. ( "Debtor") was formed around May 22, 2001, for the purpose of developing certain real property in Denton County, Texas, known as Horseshoe Nail Ranch and Dane Ranch (collectively, the "Ranch"). Brunswick Homes is a 51% Limited Partner of Debtor. Trey Wasser ("Wasser") is the General Partner and a 38%

2

Limited Partner of Debtor. Mia Hendrickson is a 10% Limited Partner of Debtor.

During the relevant time period, Moore also owned and operated James H. Moore and Associates ("Associates") a company formed to do real estate brokerage. Associates shared the same address as Brunswick Properties and Brunswick Homes. On May 29, 2001, Debtor executed an agreement with Associates to manage and develop the Ranch. Pursuant to a Management Agreement, Associates was to provide all accounting services and receive all mail for the Ranch.

On the same date Debtor and Associates entered into their Management Agreement, Debtor obtained a loan of $1,450,000 from Northstar Bank of Texas ("Northstar Bank") to purchase additional property and to develop its existing property. In May 2002, Debtor sought additional funding to complete its development efforts. In particular, Debtor sought funding to pay a company called Richmond Construction to construct roads, ponds, and utilities on the Ranch. The Bankruptcy Court found that Richmond Construction was really Brunswick Properties d/b/a Richmond Construction, and that Miller agreed to have Brunswick Homes extend a $500,000 line of credit to Debtor to pay Brunswick Properties d/b/a Richmond Construction for the work. The Bankruptcy Court also found that unbeknownst to Miller, Moore documented the loan to show that the funds were advanced by Associates, not Brunswick Homes. After making these findings, the Bankruptcy Court determined that Debtor owed Brunswick Homes for the May 2002 loan.

### III. THE APPEAL

Appellant contends that it was Associates, not Brunswick Properties, that was doing

business as Richmond Construction, and that Debtor owes Associates a net receivable of $551,836.81, plus interest and attorneys fees, for unpaid invoices from Richmond Construction. Appellant also contends that, in May 2002, Brunswick Homes loaned $500,000 to Associates, not Debtor, for work to be done by Richmond Construction.[2]

## IV.    STANDARD OF REVIEW

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See In re Hamilton*, 125 F.3d 292, 295 (5th Cir. 1997). Under the clearly erroneous standard, a bankruptcy court's findings of fact will be reversed only if, considering all the evidence, the district court is left with the definite and firm conviction that a mistake has been made. *See In re Kemp*, 52 F.3d 546, 550 (5th Cir. 1995).

## V.    DISCUSSION

### A.    The Bankruptcy Court did not Clearly Err in Finding that Brunswick Properties, not Associates, was Doing Business as Richmond Construction

Appellant first argues that the Bankruptcy Court erred in finding that Brunswick Properties was doing business as Richmond Construction in 2002. Appellant contends that the determination of which entity was doing business as Richmond Construction was not properly before the Bankruptcy Court, and even if it was, Associates, not Brunswick Properties, was doing business as Richmond Construction. This is significant, because

---

[2] It is unclear from the Bankruptcy Court's opinion whether the May 2002 loan was designed to pay the unpaid invoices that Appellant claims Debtor owes Associates.

4

Associates claims the Debtor owes it over half a million dollars in unpaid invoices for work it did as Richmond Construction.

First, the Court finds that the issue of which entity was doing business as Richmond Construction was properly before the Bankruptcy Court. Unlike the cases cited by Appellant, the issue in this case was a factual determination that was helpful in resolving the objections to Brunswick Homes' claim. Moreover, both Miller and Moore testified regarding the changing of the assumed name certificates to reflect that it was Brunswick Properties, not Associates, doing business as Richmond Construction. Further, the Court finds that there was adequate evidence showing that Brunswick Properties, not Associates, was doing business as Richmond Construction. Therefore, the Court finds that this determination by the Bankruptcy Court was not clearly erroneous.

Appellant also argues that the fact that Associates had at one time filed an assumed name certificate as Associates d/b/a Richmond Construction is *prima facie* evidence that Associates was, in fact, doing business as Richmond Construction. The Bankruptcy Court acknowledged that Associates filed an assumed name certificate as Richmond Construction. However, the Bankruptcy Court also found that the actual work on Debtor's property was performed by Brunswick Properties doing business as Richmond Construction, that Miller was unaware that Moore had filed the assumed name certificate for Associates, and that upon learning of Associates' assumed name certificate, Miller had Moore withdraw Associates' assumed name certificate. The Bankruptcy Court further found that the day Associates withdrew its assumed name certificate, Brunswick Properties filed an assumed name

5

certificate as Richmond Construction. This was part of a larger agreement to sort out Brunswick Homes' books and records for 2002. The Court finds that these factual determinations were not clearly erroneous and overcome any presumption that may initially accompany an assumed name certificate.

Appellant raises several other arguments as to why the Bankruptcy Court should have found that Associates, not Brunswick Properties, was doing business as Richmond Construction. None of these arguments lead this Court to a firm conviction that the Bankruptcy Court erred. These arguments include the fact that Properties' 2002 tax return, which carried revenue generated by Richmond Construction, was inaccurate, that Brunswick Properties books and records were later altered to reflect that Brunswick Properties, not Associates, was doing business as Richmond Construction, and that there was evidence that Associates held a bank account that deposited checks from Brunswick Homes and paid Richmond Construction's operating expenses. These arguments were not lost on the Bankruptcy Court. It is apparent the Bankruptcy Court believed that, unbeknownst to Miller, Moore registered Associates as Richmond Construction and had Associates collect the funds intended for Brunswick Properties. When Miller learned what Moore had done, Miller transferred the name and assets of Associates d/b/a Richmond Construction to Brunswick Properties in order to correct Moore's misdeeds. Testimony and evidence supports these findings, such that they are "plausible in light of the record as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). Therefore, the Court AFFIRMS the Bankruptcy Court's decision that Brunswick Properties, not Associates, was doing business as Richmond

Construction.

B. **The Bankruptcy Court did not Clearly Err in Finding that Brunswick Homes, not Associates, Funded the Loan to Debtor in May 2002, but Must Clarify Whether that Loan was, or Needed to be, Assented to by Debtor**

Appellant also contends that the Bankruptcy Court erred in finding that Brunswick Homes loaned Debtor $500,000 in May 2002. Appellant claims that Brunswick Homes loaned the money to Associates, not Debtor, for work to be done by Richmond Construction. This money was then loaned from Associates to Debtor. Therefore, according to Appellant, Brunswick Homes has a claim against Associates, not Debtor, for the loan money. Appellant points to the fact that the checks written by Brunswick Homes to payee Richmond Construction contain the annotation "loan," which Appellant claims is evidence that Brunswick Homes intended to loan the money to Associates. First, the payee on the checks is listed as Richmond Construction, not Richmond Construction d/b/a Associates. Second, it is clear that the Bankruptcy Court questioned Moore's credibility and found that the documents he created, as well as his testimony, were self-serving. As the Bankruptcy Court notes, any evidence suggesting that the loan was made to Associates was created by Moore, who, as President of Brunswick Homes and author of the checks, made the "loan" annotation himself. Further, in his letter to Moore dated November 11, 2005, Miller clearly states that it was Brunswick Homes' money that funded the 2002 loan and that Miller never agreed to have Brunswick Homes loan Debtor money through any of Moore's companies. Miller then instructs Moore to transfer the loan to Brunswick Properties. The fact that Moore funneled

7

the loan from Brunswick Homes through Associates without Miller's knowledge or consent does not change the fact that the funding for the loan, used to pay Debtor's obligations, came from Brunswick Homes. Further, the Court is unpersuaded by Appellant's arguments that Brunswick Homes' 2002 tax return does not evidence a loan from Debtor or that checks written by Brunswick Homes to Richmond Construction in 2002 do not represent draws on a line of credit loan. The Bankruptcy Court's finding that funding for the loan came from Brunswick Homes is sufficiently supported by evidence. Moreover, the Court is unable to find that the Bankruptcy Court's assessment of Moore's credibility, on which Appellant's argument substantially rests, was clearly erroneous.

Appellant further claims that even if Miller and Moore agreed to have Brunswick Homes loan the money to Debtor, that agreement does not bind Debtor. Appellant points to a lack of evidence, such as a written agreement, between Brunswick and Debtor.[3] The Bankruptcy Court has noted inadequate documentation of loans by Moore to suit his own purposes. Nevertheless, there is ample evidence, including Brunswick Homes' 2002 tax return, that the loan occurred and that the money funding it came from Brunswick Homes. There is also ample evidence that when Miller found out the loan was funneled through Associates, he sought to have the loan assigned to Brunswick Properties, and, in a December

---

[3] Appellant also argues that a statement by Brunswick Homes that "Brunswick, by and through J.H. Moore and Associates, Inc., made a loan of $500,000...to the Debtor..." is a judicial admission that Associates, not Brunswick Homes, was the source of the loan. The Court finds that this argument is without merit. Brunswick Homes was simply acknowledging the fact that Moore funneled the loan through Associates.

8

12, 2003, letter to Wasser, Moore confirmed that said assignment occurred. Also, in a November 21, 2006, letter, counsel for Moore stated that his client "does not possess the original or copies of the Assignment of the Note from [Associates] to Richmond, d/b/a Brunswick, at this time....Mr. Moore assumes that the Assignment is in the possession of Brunswick." Moore's counsel also stated, "...my client does not assert any ownership interest in this Note through himself individually or through James H. Moore & Associates, Inc." Moreover, Wasser acknowledges in a January 25, 2006, letter to Miller that "...my audit confirms the amounts of money put into the Partnership [the Ranch]. I have no doubt that all this money came from you."[4] By all accounts, after Moore's unauthorized funneling of the loan was uncovered, all parties agreed that Brunswick Homes was the source of the loan.[5]

Nevertheless, the Court feels that this issue needs some clarification from the Bankruptcy Court. The crux of Appellant's argument is that there is no evidence Debtor assented to a loan from Brunswick Homes; rather, all evidence shows that Debtor only assented to a loan from Associates. The Bankruptcy Court noted that because Brunswick Homes fully performed its obligations under the loan by advancing the funds, a written

---

[4] Appellant contends that the Bankruptcy Court erred in finding that Wasser admitted Brunswick Homes was owed money from the loans, because these statements were made in compromise negotiations. Along the same lines, Appellant contends that Wasser's audit was incomplete and altered documents. The Court finds that even without Wasser's statements, there is sufficient evidence to support the Bankruptcy Court's finding that the May 2002 loan originated from Brunswick Homes.

[5] The Court is unpersuaded by Appellant's argument that the determination of which entity funded the loan was not before the Bankruptcy Court. This determination was necessary in order to establish which entity held a claim to the money.

9

contract was not required under the statute of frauds. However, the Bankruptcy Court cites no evidence that Debtor *orally* agreed to a loan from Brunswick Homes. Nor does the Bankruptcy Court clarify whether, in the absence of such evidence, it determined that Brunswick Homes deserved some sort of equitable relief, since Brunswick Homes was the source of the funds. Therefore, the Court VACATES and REMANDS Bankruptcy Court's Order on this issue for further clarification.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS in part and VACATES and REMANDS in part the July 20, 2007, Order Granting in Part and Denying in Part Objections to the Claim of Brunswick Homes, LLC. for clarification consistent with this opinion.

It is SO ORDERED.

**SIGNED this 30th day of September, 2008.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE